I'm going to pull this shit out of here. Yeah, this is where it all, yeah, there's a mark. There's two of them, this one and the Wisconsin. And Amber. And Amber, right. It's just you guys have to have a good place. It seems everybody's in here. Maybe the multipliers were.  How about that? Keep it in the air for a minute. Yeah. Yeah. You can hint at it. Good morning. May it please the court. Nicholas Ronjan on behalf of the appellant, Davison Design. Judge McKee, may I reserve three minutes of my time for a moment? Sure. The principal issue in this case, we think, was whether the district court. Well, you don't know the issue. Why would Judge Sleet? Well, it seems to me you agree begrudgingly. I don't see you agree. You accept the fact that he's the gold star as opposed to the covered fund. That's not what's bothering me. It's the multiplier that's bothering me. Exactly, Your Honor. It's the use of the multiplier, the 4.35 multiplier, to enhance the load star. That's permissible. You can use a multiplier to enhance a load star under certain circumstances, right? Certainly. And we don't dispute that. So why is it not good in this case? In this case, and the Supreme Court has held this on several different occasions, to use a multiplier, it has to be supported by specific evidence and detailed factual findings by the district court. And here, there was no record made before with respect to any kind of specific evidence that a load star was insufficient and there needed to be a multiplier used. And furthermore, the district court made no detailed findings of fact that would support the use of a multiplier. And that's really our main issue here is without those detailed findings of fact, which the Supreme Court in Purdue called to be called essential, you just can't use an enhancement or a multiplier. And so our position is that this court should reverse. If the multiplier was 0.05%, 0.025%, is it the amount of the award that results from the multiplier as well as the process of not putting on the record why you're using a multiplier? Well, our problem is twofold. We disagree with the amount, but more fundamentally, I don't think you can get to that. Which amount? The 4.35 multiplier. So in response to Judge McKee's question, a lower multiplier you wouldn't have an issue with? No, we would still have an issue. We would still believe that the district court erred in the same way. I don't think it matters for our purposes of our argument what the size of the multiplier is. It could have been a negative multiplier. It could have been a positive multiplier. You would object to a negative multiplier. We would be here if you used a negative multiplier. We probably would be. You would be going first. We'd be. But I think the fundamental issue is no matter what multiplier is used, it has to be supported by these findings of fact. And the reason for that, it makes sense. This court actually pioneered the Lodestar method of calculation. So, Mr. Ranjan, under your argument, is there a point of remand where you conclude or if Judge Sleet does anything other than straight hours times rate, you're going to tell him and us that's error? Well, our position is if there was a case to be made with respect to using a multiplier, it should have been presented the first time around. And so class counsel shouldn't get a second bite at the apple on a remand to put in additional evidence to use a multiplier. Ultimately, that would be within the scope of how this court remands the case. But our view is why do it again? They had an opportunity to present evidence supporting a multiplier before, and nothing has really changed. It may be just a question of flushing the open record. If the record were developed and the factors were put in, in the district court's mind, he thinks justify some X quantity as a multiplier. My guess is you'd be fine as long as X was sufficiently low. Even if it's a positive number. Clearly, if it's a negative number, you're right. He's going to be the acknowledgment. Assuming it's a positive X, you're okay as long as the positive X does not exceed some value. $1.1 billion is way too much in your mind. That's correct. But if it's another $50,000, my guess is you'd have a problem with that, even if he's not batting eyes and crossing Ts on the factors. Well, I do think that the end result we may not disagree with, but I think still the process has to be adhered to. I don't think my client would suggest appealing another award that's based on a lower multiplier but maybe doesn't have the same rigorous detailed findings. I'd have to talk to my client about that. But I think district courts are required to make some type of detailed findings to support any kind of multiplier. So I think the problem is with the process and what that process yields in the end. We would have to look at the final award. But at that point, it would be an abuse of discretion. If the district court went through all the right steps, it was supported by specific evidence, these detailed factual findings, and concluded that a multiplier of X was appropriate, our chances on appeal may not warrant us taking another appeal because at that point, I think this court has made clear that district courts, once they follow those steps, have the discretion to award appropriate attorney's fees in these types of cases. Your Honors, if I could just address the alternate argument made by class counsel here. So class counsel, they have attempted in their brief to defend the district court's analysis with respect to using a multiplier. They basically argued that this court can affirm, but it would affirm on the basis of the percentage of recovery method. And that argument is basically an argument that the district court erred and abused its discretion in picking Lodestar over percentage of recovery, and that this court should use percentage of recovery. Let me speak for myself here. You can make the argument. You can use your time the way you want, but this case is not about that. It doesn't seem to me this is a percentage of recovery case, because then you get into is it the retail value of the vouchers or is it the wholesale value? And that's our position. And I think CAFA really adds another layer onto that, that I'm not even sure you could use a percentage of recovery for a settlement involving vouchers or coupons, unless it's based on the actual value of the vouchers redeemed. And I think CAFA then drives you under 1712B to using a Lodestar. But on that issue, again, we don't think that's the main issue. We would respectfully request that this court reverse the district court on the basis of using a multiplier and remand the case. Give me an example of when the multiplier would be appropriate. If it's 4.35 or somewhere in the neighborhood, what sort of case would justify that sort of multiplier? One case is this court's decision in AT&T. So in AT&T, you had a case where this court found that there were 4.5 million pages of documents involved, 80 fact witnesses were deposed, significant outlay of expenses by plaintiff's counsel. There were disputed acrimonious motions to dismiss, class certification, summary judgment. The case was actually then tried for two weeks, and then it was settled. And in that case, the court blessed a multiplier of 1.28. So I think you can see why we have an issue with the amount of the multiplier. Of course, that's, I think, an issue on remand for the district court. But in that case, that's a 1.28 multiplier. In our case, and I'd say nothing to denigrate the good job of class counsel, but this wasn't a complex case. There was 565 hours of time, billed time spent by class counsel. Really, we briefed a motion to dismiss, and then we added to mediation, and we settled the case. We produced, later on in the case, about 8,400 pages of documents, and they spent about two weeks. And you're okay with what they're saying in terms of the number of hours they put in. That's reasonable, you know, by the way. Yeah, we never disputed their timesheets or their hourly rates, as you a lot of times see in these Lodestar cases and why this court has pushed back on the use of the Lodestar because it becomes a really tedious exercise when you're talking about rates and hours. We did none of that. We accepted their timesheets, and we said we'll pay the Lodestar. We think that's the appropriate method in this case. And our problem was the use of the multiplier because we don't think it was justified, nor do we think it could be justified on remand, just based on the nature of the case. And I don't think the Lodestar, so you use a multiplier when the Lodestar doesn't tell the whole story. The Lodestar here tells the story. If I understand your argument, maybe it's only as a pragmatic matter rather than an analytical matter. There possibly would have been some number between the Lodestar and 1.1 million where you would have said, well, maybe we don't agree, but it's not obviously wrong. Or we can't convince two circuit judges that it's obviously wrong. Exactly, Judge. I mean, it would just depend on the reasoning, the evidence, the record, and the reasoning of the district court where we have to make a reasoned decision. Boy, is this an abuse of discretion knowing this court's standard with respect to attorney's fees. If there are no other questions, thank you. May it please the Court, Richard Cross from Cross & Simon on behalf of Deborah Dungey and the class. Judge, if I can, I know you've got a job to do here and you're obviously a highly skilled litigator. Let me see if I can inject an element of common sense into this. What's really at issue here is the box, right? The process, and I know Mr. Rangel was concerned about the process, but even he admitted wherever the process would be, if the dollars came out and went so bad, i.e. the multiplier was lower than the multiplier at all, he'd be okay with that. You're not objecting, really, to the fact that he was a lodestar, right? You're just here to defend the multiplier of 4.35%. Well, that's not really correct, Your Honor. At the trial court level, at the district court, we did argue for a percentage of recovery method. Right, but you lost and he really lodestar. Well, and we discussed that in our brief then. If there was an error, I think it was the court's failure to use that percentage of recovery method because... Did you cross appeal on that ground? No, I did not, but I don't think I needed to to the extent I'm not trying to exceed the $1.1 million fee recovery. What the appellant did was... So however the car gets the $1.1 million, you're fine with. Right, right. The key is the right number is $1.1 million, the just number from your perspective. Well, I don't think that the number that the court awarded was unfair. I'll say that. Justify the multiplier for us. What was so extraordinary about this case? Right, and I'm not necessarily saying... Again, I think a percentage of recovery method is the proper method. Justify the multiplier. Sure. I mean, this is a case that does not... As typical in most class actions, the individual claimant that comes in does not have an extraordinarily large claim, right? Her claim was for, I think, about $8,000. Can you tell me $80,000? $8,000. So in an individual case, it becomes very difficult to bring a case like that. And so as a small firm, you take on a case like this. It does, as much as Mr. Rajan, or I'm sorry, as much as the public counsel wants to say, it didn't involve a lot of work. $560 was a lot of work for us. I'm asking you to justify it for us. Sure. And I'm saying, I think that was a lot of work to put into this case to get it to where it was. The case involved a difficult issue of the statute of limitations. We recognize that. But he says it's a tag-along case. Well, and he says that now. During the litigation itself, they took the position that the FTC litigation was not dispositive of anything in the case, as the FTC did not involve the AIPA statute. Davison, which is the appellant, took the position that the FTC litigation had no res judicata effect in this litigation. And the only reason that Davison looked to the FTC litigation was to say that it put the class on notice that they had a potential breach of contract in the AIPA claim. Which should this court do, if anything, with the fact that none of that reasoning appears in the writing to be the basis for the district judge's decision on the multiplier? I'm not saying you're incorrect on what you're saying, but that doesn't appear to be part of the reasoning for the use of the multiplier below. Sure. Well, I think the issue is that the court's decision didn't really give much reasoning at all. He took a period of time, and he said the Third Circuit seems to accept a range of multipliers. 4.35 seems to be the average. If that is wrong, if it's factually wrong, forget the legal necessities of it, if it's factually wrong, and they've introduced a study over a much broader of time, which would suggest it's very wrong factually, then why shouldn't we just remand for one of two things? Either he reconsiders what our average is, or we tell him what our range of numbers is, or he puts into his opinion the kind of detail that we've required, the Supreme Court has required, to justify the enhancement of an award star. Well, I think if you do look at his reasoning, he starts out by talking about why he didn't apply a percentage of recovery method. That makes sense. To me, it makes sense. And you just told us you're not appealing that. Well, because the appellant has appealed the court's attorney fees award. The appeal itself, when it was filed, was not an appeal based solely on the multiplier. It was the award itself, the decision in that award, which, if it's remanded, it ought to be remanded for the court to make a full decision, including the possibility of applying a percentage of recovery. That doesn't help for us, though. Had you learned that, it seems to me you would have... I didn't say why you didn't take the appeal. You got 1.1 million, but I said, why didn't you take the appeal? So I didn't say why you didn't take the appeal. But the fact is you didn't take the appeal. That was really not before. So if we were to remand, just speaking hypothetically, I don't know how we could send it back and say, okay, judge, forget the Lone Star II, because the order we're looking at, the issue seems to be where did that 4.35 come from? Is it reasonable? And is the judge's very cursory reason for coming up with 4.35, is that consistent with the law and is that record supported? Sure. And, I mean, certainly we would go back, if we had to go back to the trial court and make the arguments about why we believe a multiplier is appropriate, we would do that. And I do think that we put in an extraordinary amount of work, given the risks that were associated with the litigation and the statute of limitations defense, which was still front and center in the case. We spent, you know, I think probably, well, it's now been almost or more than six years on this case. And, again, I think for an attorney to take on a case that's on a contingency when they're facing significant roadblocks to a recovery should allow for a multiplier if they're successful, which we were in this case. But every case has obstacles to recovery or they settle right away, right? I mean, every case has some obstacle or they're not brought or they settle immediately. So what's so extraordinary about a statute of limitations argument? Well, the statute of limitations argument in that case was that years before the class members were put on notice because of the FTC litigation that they had a potential claim. And so that issue was raised in a motion to dismiss. The court denied it without prejudice and said that they could bring it up again later once discovery was concluded. So the point, I guess, is... So is that extraordinary? Well, it was a significant roadblock, I think, more so than what you might see in other cases. And so that combined with the... Every case has a 12B6 motion filed, literally. So if that's our matrix, then every case is extraordinary. Well, again, I think if the court remands it, what it should be remanding is based on what the appellant asked for, which is to have the attorney fee award overturned. The appellant, in their appeal, did not ask for the court to simply take away the multiplier. Their appeal simply says they're appealing the court's decision on attorney fees, and therefore it's remanded. That's because appellants appeal judgments. They don't appeal opinions. So I don't know that Mr. Rajan is obligated to say, and the reason we think this order should be vacated is X. Right. And like I said, I'm not asking for more rights than I had going into this. In other words, I'm not seeking, if it goes back on a percentage of recovery analysis, I'm not saying that the court should award me more than... But you don't believe you were obligated to cross-appeal from the order also? Only if I wanted to get in excess of the $1.1 million fee. I believe that would have required me to do that. So I'm not seeking to expand my rights. And I think if one looks at the trial court's analysis on whether to apply a percentage... Well, you're actually getting your rights because it gives you an alternative argument that's not available to you. Wouldn't that be a right, a right to make an alternative argument that's not available to you right now? It's not just about the money. Well, I think both sides argued over which analysis should be made. You're justifying your lack of a cross-appeal because you don't want to expand your rights. One of the rights is making an alternative argument. Right? I mean, that's a right. If the court applied the wrong standard, which is what the appellant has said, then if the proper standard is a percentage of recovery analysis, the court should remand it and say apply a percentage of recovery analysis. That's why I started this by trying to keep this down with some kind of getting past all the litigation posture and really getting into what's involved here. What's involved here is the 4.35% and 1.1 million or less. And I know I guess theoretically you could argue percentage of recovery, but that's not what's driving this. What's driving this is the 4.35% and 1.1 million. That's why I'm trying to keep it there so we're arguing about what's really before us as opposed to what... It's not a law school exam. And so I'm trying to avoid going down a road that we really don't have to go down. I understand you're arguing that because you don't want to give up anything, but I think you understand that's probably not going to happen. Speaking for myself, it's probably not going to happen. Well, respectfully, Your Honor, I believe that if the appellant makes the argument that the court applied the wrong standard, and if this court looks at that and says he did apply the wrong standard, let's assume for a moment the court decides that he applied the wrong standard. The proper standard for a case like this where there is essentially $2.8 million in cash and I think about $25 million in vouchers available, the proper analysis is to do a percentage of recovery analysis. Then remanding it and asking the trial court to now make a lodestar analysis, which the court has determined is not appropriate, is simply doubling down on what was potentially the wrong analysis. No, there's nowhere in the brief in terms of summary or argument presented that they say the court applied the wrong standard. The main issue is the court erred in its decision to adopt the lodestar multiplier of 4.55 percent. Under that, it erred in adopting the lodestar multiplier without making presented findings. Under that, it erred in relying on so-called average multiplier. Under that, the average used by the court is only used as a cross-check, and that's where the percentage of recovery comes in. It's a cross-check on the money you get after you apply the lodestar, but their brief is really not asking to return the decision of the lodestar. Right, and I understand their brief isn't asking for that, but what I'm looking at is their notice of appeal. I mean, we didn't file a cross-appeal because we look at their notice and it says, defendant appeals from the part of the orders awarding attorney fees and costs in the amount of $1.8 million. It's usually the briefs that the foundation affords, not the notice of appeal, as always. Well, and they discuss the fact that we had urged a percentage of recovery method, which they claim the court rejected. And when they argue that the court rejected it, I think when you look at what the court's analysis was for not using a percentage of recovery method, it wasn't because it was wholly inappropriate in some way. But you only need the percentage of recovery conversation as a light frame for the $1.1 million. Whatever will get the $1.1 million safe and sound on shore, you're fine with? Well, certainly I don't want to lose out on the fees when I've worked on this case for that many years. I'll acknowledge that. But I think the percentage of recovery analysis, if that's what this court says would be an appropriate method, makes what the court did below harmless error, because I believe that an award of $1.1 million is well within what would be any percentage of recovery analysis that would be done. The recovery was $550,000. Maybe getting to the argument of the mutual value, but the actual dollar that was recovered wasn't $550,000. Well, the case law says you look at what are the benefits that are available to the class. It was about $2.8 million in cash option and about $25 million in voucher option. So when we look at it that way, for a $1.1 million recovery on a percentage of recovery analysis, it's well within the total value of the settlement. We send it back and we buy your argument. We say, okay, taking a look at this thing, we're back to square one. He says, you know, I should have used a percentage of recovery method here. I look at this as the amount recovered is $550,000. I'm going to give him a percentage of that. Now you'd not be very happy about that. Well, I agree with that. But I still think that the percentage of recovery analysis is the appropriate one. I think the case law says certainly in the area of a cash option that you look at the benefits available. And I know that the appellant here wants to say that the vouchers are really coupons and they can only be valued based on what's taken by the class. But that really turns the whole voucher coupon issue on its head because normally the problem with coupons is, you know, number one, they're a small deduction off of some future purchase where you're having to pay more money back to the defendant. The class member would have to pay more money to the defendant. That's not happening here. What's happening here is they're given a cash option, and if they want they can get what is viewed as potentially a more valuable voucher option. But the voucher doesn't require them to go out of pocket in any way. And I think the case law there shows that vouchers in that situation are not coupons. And once you get it, if the court accepts the idea that you at a minimum have a cash option, which you do, you don't look at what's been taken by the class, you look at what's available to the class. And I think the case law is consistent on that, including cases from the Supreme Court that say that I shouldn't be limited because class members choose not to submit a claim. We did work to make a settlement available to a class. We got notice out to that class. We had over, I think, 5,000 people accept or submit claims as a result. But what was made available to them was in excess of $2.8 million in cash and $25 million in vouchers. And I think under any analysis of percentage of recovery, we're well within it. If the court has no other questions, thank you. Thank you. Let me start where Mr. Cross left off. Let's assume it does go back. Are both options still available to the district court? No, Your Honor. And I think the cross-appeal issue is an interesting one. Our position is they were obligated to cross-appeal in order to preserve the error with respect to the district court choosing Lodestar over percentage of recovery. Note in their brief how they framed that issue. They've argued that this court can affirm on the basis of percentage of recovery because there was a harmless error. To me, this is not sort of a harmless error argument. You know, when you think of harmless error, you think of, well, there's an end result, but that could be supported by an alternative ground in the record. That's not the case here. They're saying there's an end result, but it can be supported if you find that the district court erred also on this other basis in picking Lodestar over percentage of recovery. That's an error that needed to be raised by a cross-appeal with this court to preserve it. So if we go back before the district court and they attempt to raise percentage of recovery, we would argue, one, that they're precluded from doing so because they didn't cross-appeal that issue, and, two, that it's also law of the case. And at that point, really the district court has the option of employing a Lodestar and deciding whether to use a multiplier or not depending on the scope of relief that this court issues in its decision. But I think the cross-appeal issue is an important one because we don't also want to reopen this whole can of worms when we go back on and protract this litigation. So our position is they had to cross-appeal. In our brief, we made the argument. And I don't mean this critically, Mr. Rondon. If you go back and Judge Sleet holds a hearing, hears argument, and concludes that Lodestar multiplier of 2.75 is just what the doctor ordered, you may well protract the litigation by coming back. Sure. And I can't rule out that alternative. We'd have to wait and see. And our goal, I think both sides' goal, is to get some finality here. I remember what you just said. Yeah. But, Your Honor, I actually don't foresee that as a result based in part on Judge Estrepo's question when he put it to class counsel. Well, what here is how is a multiplier justified in this case? And I think that class counsel is going to have a hard time justifying a multiplier, particularly one as high as even 2.75. And I just picked a number out of the air. Sure. And Judge Sleet just picked a number out of the air. That's exactly right. And I think there has to be more to that. And if you see the really robust decisions employing a multiplier, they analyze the Lodestar and what's not taken into account in a Lodestar here that we need to enhance or multiply. And, again, it goes to things like there were 100 depositions. This was a $100 million settlement. The fee amount does not reflect the true market value of attorneys in that area. There was a great outlay of expenses by class counsel. I mean, we had a case here. There were no depositions, no summary judgment, not extensive discovery, filed a motion to dismiss, and we went right to mediation. And class counsel spent 565 hours on this case. You're not going to find a single case in this circuit that supports a multiplier of, I think, even 2, where class counsel spent 565 hours. In most of these cases, they spent thousands and thousands of hours to get to a multiplier of 1.28. So, of course, that's obviously for another day. Our position is, and the relief that we seek, just to be clear, is for this court to reverse the district court's decision on attorneys' fees and to remand with instructions to either our primary request would be just to apply the Lodestar because they had an opportunity to make a record on the multiplier or, at a minimum, remand with instructions for specific evidence to be put on and factual findings to further develop that record. Thank you. Thank you. Counsel, for a second, please come up to the bench. Yes, Your Honor. Hey, come on over here. Is the mic on? Can I just talk to the judge in front of me? You knew the word, I almost forgot. Thank you. Thank you. Thank you.